IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:20-CV-29-BO

| | | |
|---|---|---|
| AMOS N. JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| CAMPBELL UNIVERSITY, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the motions of Defendants Campbell University, John Bradley Creed, Robert Cogswell, and Timothy Zinnecker ("Defendants") (1) for a protective order pursuant to Fed. R. Civ. P. 26 asking the court to preclude compliance with six subpoenas served by Plaintiff Amos N. Jones on non-parties, [DE-80], and (2) to compel an independent mental examination ("IME") of Plaintiff pursuant to Fed. R. Civ. P. 35, [DE-83]. Plaintiff responded in opposition to the motion for IME, [DE-86], and both parties responded to the court's order regarding the Local Civil Rule 7.1(c)(2) certification, [DE-94, -95]. For the reasons that follow, the motions are allowed.

**1. Defendants' Motion for Protective Order [DE-80]**

On May 20, 2020, Plaintiff's counsel advised Defendants' counsel that he planned to issue the following day six subpoenas for documents to the following: Jennifer L. Rosato Perea, Dean and Professor of Law, DePaul College of Law in Chicago, Illinois; Nancy Morrison O'Connor, General Counsel, The Catholic University of America in Washington, D.C.; Bradley J.B. Toben, Dean and M.C. & Mattie Caston Chair of Law, Baylor University Law School in Waco, Texas; Christopher A. Bracey, Interim Dean of The George Washington University School of Law in

Washington, D.C.; Michael F. Barry, President and Dean, South Texas College of Law in Houston, Texas; and Leslie C. Packer, Managing Partner of the law firm Ellis & Winters, LLP. Defs.' Mot. [DE-80] at 1. The subpoenas set a response deadline of May 27, 2020 to provide the requested documents to Plaintiff's counsel's law firm in Raleigh, North Carolina. *Id.* at 2–3, Exs. 2–7 [DE-81-2 through -81-7]. Defendants' counsel was not provided with executed copies of the completed subpoenas despite multiple requests. *Id.* at 3–4.

Defendants seek a protective order precluding compliance with the subpoenas on the grounds that they are procedurally and substantively deficient because five of the subpoenas command production of documents more than 100 miles from the subpoenaed party's location, Plaintiff failed to provide timely notice to Defendants prior to service, the subpoenas do not provide adequate time for compliance, and the subpoenas request irrelevant information. *Id.* at 4–9. Plaintiff did not respond to the motion, but indicated in his notice regarding Defendants' Rule 7.1(c)(2) certification that he intends to reissue subpoenas to comply with form and/or service requirements lacking in the first instance. Pl.'s Notice [DE-95] at 1.

Rule 45 of the Federal Rules of Civil Procedure permits a party to issue subpoenas for the production of documents and other things from nonparties. Fed. R. Civ. P. 45(a)(1)(C); Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection."); *In re Subpoena to Robert Kochan*, No. 5:07-MC-44-BR, 2007 WL 4208555, at *4 (E.D.N.C. Nov. 26, 2007) ("Rule 45 expressly permits a party to issue discovery subpoenas to a nonparty for documents and things in the nonparty's possession, custody, or control.") (citing Fed. R. Civ. P. 45(a)(1)(C)). A subpoena is to be issued from the court where the action is pending, Fed. R. Civ. P. 45(a)(2), but before serving a subpoena on a nonparty, counsel must serve a notice and copy of the subpoena on each party, Fed. R. Civ. P.

45(a)(4) ("If the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party."). "This notification requirement exists, in part, to allow a party to object to both the substance of the subpoena and its service on the nonparty." *Solais v. Vesuvio's II Pizza & Grill, Inc.*, No. 1:15-CV-227, 2015 WL 6110859, at *5 (M.D.N.C. Oct. 16, 2015). A subpoena may command production of documents at a place within 100 miles of where the subpoenaed person resides, is employed, or regularly transacts business in person. Fed. R. Civ. P. 45(c)(2). A court must quash or modify a subpoena that fails to allow a reasonable time to comply or requires a person to comply beyond the geographical limits specified in the Rule. Fed. R. Civ. P. 45(d)(3)(A)(i), (ii).

Rule 45 adopts the standard codified in Rule 26 in determining what is discoverable. *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005).

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). The rules of discovery are to be given a broad and liberal construction. *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Nemecek v. Bd. of Governors*, No. 2:98-CV-62-BO, 2000 WL 33672978, at *4 (E.D.N.C. Sep. 27, 2000). While Rule 26 does not define what is deemed relevant for purposes of the rule, relevance has been "broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *EEOC v. Sheffield Fin. LLC*, No. 1:06CV889, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007)

(quoting *Merrill v. Waffle House. Inc.*, 227 F.R.D. 467, 473 (N.D. Tex. 2005)). The district court has broad discretion in determining relevance for discovery purposes. *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489 (4th Cir. 1992).

However, simply because "requested information is discoverable under Rule 26[(b)] does not mean that discovery must be had." *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004). Indeed, the court is authorized to impose appropriate limitations on discovery. Rule 26 provides that the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Such orders may prescribe, among other measures, "forbidding the disclosure or discovery" or "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26 (c)(1)(A), (D). A party moving for a protective order has the burden of making a particularized showing of why discovery should be denied, and conclusory or generalized statements in the motion fail to meet this burden. *Smith v. United Salt Co.*, No. 1:08CV00053, 2009 WL 2929343, at *5 (W.D. Va. Sept. 9, 2009); *Jones v. Circle K Stores, Inc.*, 185 F.R.D. 223, 224 (M.D.N.C. 1999); *see also Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402–03 (4th Cir. 2003).

Generally, a party lacks standing to challenge a subpoena issued to a nonparty. *In re C.R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 287 F.R.D. 377, 382 (S.D. W. Va. July 12, 2012). However, where the challenging party has moved for a protective order, the court is permitted to consider its position on the merits. *Artis v. Murphy-Brown LLC*, No. 7:14-CV-237-BR, 2018 WL 3352639, at *2 (E.D.N.C. July 9, 2018) (citing *EEOC v. Bojangles Restaurants, Inc.*, No. 5:16-CV-654, 2017 WL 2889493, at *4 (E.D.N.C. July 6, 2017)); *Brown v. Mountainview Cutters, LLC*, No. 7:15-CV-204, 2016 WL 3045349, at *2 (W.D. Va. May 27, 2016) ("[E]ven if the court could

find that [the movant] did not have standing to quash the subpoenas under Rule 45 of the Federal Rules of Civil Procedure, she would still have standing under Rule 26 to challenge the subpoenas as irrelevant and overbroad."); *HDSherer LLC v. Natural Molecular Testing Corp.*, 292 F.R.D. 305, 307 (D.S.C. 2013) ("Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena. . . . Notably, however, Defendant has also made a motion for a protective order under Rule 26; therefore, Defendant has standing to challenge the subpoenas under Rule 26 standards, regardless of whether [it has] standing to bring a motion to quash under Rule 45."). Accordingly, the court has standing to consider the merits of Defendants' motion.

The court agrees that Plaintiff's subpoenas are procedurally and substantively deficient. The five subpoenas issued to Perea, O'Connor, Toben and Caston, Bracey, and Barry require documents to be produced beyond the 100 mile geographical limit found in Fed. R. Civ. P. 45(c)(2)(A). *See Thomas v. DeLong*, No. 3:18-CV-033-RJC-DCK, 2018 WL 10689466, at *2 (W.D.N.C. Sept. 6, 2018) (quashing subpoena as presenting an undue burden and likely being invalid because it required a non-party located in Texas to produce documents at defense counsel's office in Charlotte in violation of the geographical limit set forth in Fed. R. Civ. P. 45(c)(2)(A)) (collecting cases); *Bojangles' Restaurants, Inc.*, 2017 WL 2889493, at *5 ("[T]he subpoena commands production of documents from Fayetteville, North Carolina to a location in Charlotte, North Carolina, which exceeds the permissible 100 mile geographical limit imposed by Rule 45 by a distance of approximately 30 miles. This flaw requires quashing or modifying the subpoena. Fed. R. Civ. P. 45(d)(3)(A)(ii)."). The subpoenas also do not allow a reasonable time for compliance. The subpoenas were served on May, 21, 2020, and requested documents be produced by May 27, 2020. Defs.' Mot. [DE-81] at 7, Exs. 2–7 [DE-81-2 through -81-7]. Given the breadth

of the document requests, six days is not a reasonable time to comply with the subpoenas. *See* Fed. R. Civ. P. 45(d)(3)(A)(i) (requiring, on timely motion, the court to quash or modify a subpoena that "fails to allow a reasonable time to comply").

Turning to the substance of the requested documents, the subpoenas contain requests for undefined categories of documents, including "All communications," "All complaints," "All references," [DE-81-2 through -81-7], as well as "All personnel files" for certain individuals, including non-parties, [DE-81-4, -81-6, -81-7]. The lack of definition for these terms renders the subpoenas vague and overly broad. This is particularly problematic with respect to the personnel files, which are "by their very nature, highly confidential and a strong public interest weighs in favor of protecting the privacy rights of non-party employees." *Bouygues Telecom, S.A. v. Tekelec, Inc.*, No. 4:05-CV-78-FL, 2006 WL 8438418, at *2 (E.D.N.C. Nov. 6, 2006) (citations omitted). Because of that strong public interest in confidentiality, production of personnel files of non-party employees is ordered only when: "(1) material is clearly relevant; and (2) the need for disclosure is compelling because the information sought is not otherwise readily available." *James v. Peter Pan Transit Mgmt., Inc.*, No. 5:97-CV-747-BO, 1999 WL 735173, at *11 (E.D.N.C. Jan. 20, 1999) (citations omitted); *see also Amos v. Welles*, No. 4:18-CV-28-D, 2019 WL 1428680, at *3 (E.D.N.C. Mar. 29, 2019).

Accordingly, for all these reasons,[1] the court finds good cause to issue a protective order precluding compliance with the subpoenas issued to Jennifer L. Rosato Perea, Dean and Professor of Law, DePaul College of Law in Chicago, Illinois; Nancy Morrison O'Connor, General Counsel, The Catholic University of America in Washington, D.C.; Bradley J.B. Toben, Dean and M.C. &

---

[1] Given the multiple deficiencies that merit issuance of a protective order, the court declines to address the issue of notice raised by Defendants. Plaintiff shall ensure future compliance with the notice requirement of Fed. R. Civ. P. 45(a)(4).

Mattie Caston Chair of Law, Baylor University Law School in Waco, Texas; Christopher A. Bracey, Interim Dean of The George Washington University School of Law in Washington, D.C.; Michael F. Barry, President and Dean, South Texas College of Law in Houston, Texas; and Leslie C. Packer, Managing Partner of the law firm Ellis & Winters, LLP, Exs. 2–7 [DE-81-2 through -81-7]. Defendants' motion is allowed without prejudice to Plaintiff to reissue modified subpoenas that comply with the standards set forth in this order and the Federal Rules of Civil Procedure.

**2. Defendants' Motion to Compel an Independent Mental Examination [DE-83]**

Defendants move the court, pursuant to Fed. R. Civ. P. 35, for an order compelling Plaintiff to submit to an IME during the week of October 12, 2020 for no longer than three hours; to be performed by Defendants' expert Dr. Katayoun Tabrizi at the neutral location of Offices of Moria Artigues, MD in Cary, North Carolina; and to evaluate whether Plaintiff suffers from any pre-existing psychological impairment, whether Plaintiff's allegations for emotional or psychological injury are reliable and credible, and whether Defendants' conduct proximately caused any emotional or psychological injury alleged by Plaintiff. Defs.' Mot. [DE-83] at 1–2. Plaintiff objects that the IME is inappropriate, and the proposed examiner is unqualified. Pl.'s Resp. [DE-86] at 2–6.

Rule 35 enables the court to "order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination." Fed. R. Civ. P. 35(a)(1). The examination may only be ordered "for good cause." Fed. R. Civ. P. 35(a)(2)(A). The court must determine (1) whether the condition to be examined is "in controversy" and (2) whether "good cause" exists for the examination. *Walton v. N.C. Dep't of Agric. & Consumer Servs.*, No. 5:09-CV-302-FL, 2011 WL 883579, at *2 (E.D.N.C. Mar. 11, 2011). "In controversy" and "good cause" "are distinct concepts which must be addressed separately." *Id.* (citations omitted).

When a plaintiff asserts a mental or physical injury, he "places that mental or physical injury clearly in controversy." *Schlagenhauf v. Holder*, 379 U.S. 104, 119 (1964); *see also Peltier v. Charter Day Sch., Inc.*, No. 7:16-CV-30-H, 2017 WL 4582459, at *1 (E.D.N.C. Jan. 6, 2017) (denying a Rule 35 motion for a mental examination because "Plaintiffs have pled no cause of action placing their mental state at issue"); *Walton*, 2011 WL 883579, at *3 (holding that "the plaintiff's mental condition is clearly in controversy" because the plaintiff asserted claims for severe emotional distress); *Smith v. Bd. of Governors of the Univ. of N.C.*, No. 7:08-CV-30-D, 2008 WL 4877131, at *1 (E.D.N.C. Nov. 10, 2008).

Good cause "means more than relevancy." *Peltier*, 2017 WL 4582459, at *1 (citation omitted). "[T]he invasion of the individual's privacy by a physical or mental examination is so serious that a strict standard of good cause, supervised by the district courts, is manifestly appropriate." *Guilford Nat. Bank of Greensboro v. S. Ry. Co.*, 297 F.2d 921, 924 (4th Cir. 1962). Courts have found good cause for an examination when it is needed "in order to defend against the claim," *Smith*, 2008 WL 4877131, at *2, when "an independent examination is necessary to provide a counter-expert opinion in response to the expert opinions offered by plaintiff's health care providers," *Walton*, 2011 WL 883579, at *3, or "[w]here the average lay person would have difficulty evaluating the nature, extent, and cause of the claimant's injuries," *E.E.O.C. v. Maha Prabhu, Inc.*, No. 3:07-CV-111-RJC, 2008 WL 2559417, at *2 (W.D.N.C. June 23, 2008).

There appears to be no dispute that the "in controversy" requirement is met. Plaintiff in his Amended Complaint alleges Defendants' actions caused him to suffer physical and emotional harm, and he seeks damages for emotional distress and pain and suffering. Am. Compl. [DE-14] at 53, 57, 73–74; *see also* Pl.'s Initial Disclosures [DE-83-2] (stating that Plaintiff is entitled to

payment for emotional distress and pain and suffering). Thus, the court must determine whether good cause exists for a mental examination.

First, Plaintiff contends that an IME is not appropriate because Plaintiff conceded that his alleged medical conditions, including anxiety, stress, insomnia, and serious skin breakouts, occurred between January 2017 and May 2017, and, thus, those conditions cannot be evaluated in 2020 because they no longer persist. Pl.'s Resp. [DE-86] at 2–3. However, in Plaintiff's initial disclosures, he contends that while he was "declared cured" in May 2017, "symptoms returned in April 2020 after Campbell revealed in their Answer to the lawsuit and in a letter to Jones's attorneys that they were intentionally holding his personal property hostage." [DE-83-2] at 8.[2] Furthermore, Defendants intend to use the examination to explore whether Plaintiff had pre-existing conditions and whether his allegations of emotional distress and pain and suffering are reliable and credible to rebut Plaintiff's claim that Defendants' conduct proximately caused Plaintiff's alleged injuries. Defs.' Mot. [DE-84] at 4.

Next, Plaintiff contends that during the investigation of Jones's short-term disability claim Defendants' own medical expert, working on behalf of Defendants' insurer Sun Life, issued an October 19, 2017 report that found Plaintiff was disabled from March 2017 to May 2017 due to the conduct of Defendants. Pl.'s Resp. [DE-86] at 3. The report was filed in this action as an exhibit to Plaintiff's response to Defendants' partial motion to dismiss. [DE-67-7]. However, according to the report, the disability determination was conducted on an administrative record review and no IME was conducted at that time. *Id.* at 3 ("We reached our decision by reviewing the entire administrative record . . . ."). Additionally, while there may be some overlap, the disability determination focused on whether Plaintiff's impairments prevented him from

---

[2] The page number referenced is that assigned by CM/ECF rather than the document's internal page number where they differ.

performing his job rather than the defense of Plaintiff's claims in this matter. Plaintiff's assertion that the court "already credited" the report in its order on the motion to dismiss does not justify denying an IME because the court merely noted that the report "demonstrates that his conditions did not interfere with his functional ability as of March 13, 2017." [DE-79] at 6. The report does not address the same issues Defendants seek to explore in the proposed IME.

Finally, Plaintiff contends Dr. Tabrizi is not qualified in the field of "academic pressures against Black professors and administrators of international standing and the effect of a racially segregated tenured faculty on such scholars." Pl.'s Resp. [DE-86] at 4–5. Plaintiff suggests he might agree to examination by such an expert and suggests Dr. Alvin Poussaint, a Harvard Medical School Professor Emeritus, would be satisfactory. *Id.* at 5. Plaintiff also appears to take issue with Dr. Tabrizi being "Raleigh-based." *Id.* at 4. The proposed scope of the examination is to evaluate whether Plaintiff suffers from any pre-existing psychological impairment, whether Plaintiff's allegations for emotional or psychological injury are reliable and credible, and whether Defendants' conduct proximately caused any emotional or psychological injury alleged by Plaintiff. Defs.' Mot. [DE-83] at 1–2. Dr. Tabrizi is board certified in psychiatry and neurology and has been in practice since 1992 in positions including Clinical Associate in the Department of Psychiatry and Behavioral Sciences at Duke University Medical Center from 1992 to present; Attending Psychiatrist at John Umstead Hospital, North Carolina Department of Health and Human Services from 1992 to 1998; Medical Director of Central Prison and Central Prison Hospital for the North Carolina Department of Correction from 1998 to 2002; and in private practice, which includes civil and criminal forensic evaluations for use in state and federal courts, public sector work, and VA hospital clinical work, from 2002 to present. [DE-83-1]. Dr. Tabrizi appears well qualified to opine on the issues within the scope of the proposed IME. Defendants

are not seeking to explore "academic pressures against Black professors and administrators of international standing and the effect of a racially segregated tenured faculty on such scholars," Pl.'s Resp. [DE-86] at 4–5, and thus Dr. Tabrizi's expertise, or lack thereof, in that area is of no import. Finally, it is unclear how Dr. Tabrizi being Raleigh-based has any bearing on qualification, and Plaintiff makes no argument that submitting to the IME in Cary, North Carolina would be burdensome. Accordingly, the court finds good cause for the IME, and the motion is allowed.

So ordered, the 3rd day of August 2020.

_____
Robert B. Jones, Jr.
United States Magistrate Judge