# Exhibit 10

# Hand It Over

BY MARK HANSEN

DECEMBER 29, 2005, 11:12 AM CST

- 
- Tweet
- Share
- 
- 

More than 20 years ago, the District of Columbia Bar came up with a way to help criminal defense lawyers squeeze out from between an ethical rock and a hard place.

And the plan offers such a simple solution to a difficult ethics dilemma that the District of Columbia Bar's chief counsel says he is a little baffled that no other bars have tried it.

"All I can do is put it out there and suggest that it works," says Wallace "Gene" Shipp Jr. The dilemma arises when a lawyer obtains physical evidence such as a gun that relates to a crime for which a client faces possible charges.

A lawyer in that situation must find a way to resolve the conflict between two fundamental duties.

On one hand, the lawyer is obligated to preserve attorney-client confidences. Rule 1.6 (Confidentiality of Information) of the ABA Model Rules of Professional Conduct, for instance, sets forth the generally recognized rule that a lawyer may not reveal information relating to the representation of a client without the client's informed consent.

But on the other hand, ABA Model Rule 3.4 (Fairness to Opposing Party and Counsel) states another widely recognized principle, that a lawyer may not "unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value." (The ABA Model Rules are the basis for most professional conduct rules that regulate lawyers at the state level.) The commentary to Model Rule 3.4 describes how courts have tried to split the difference between these two obligations.

"Applicable law may permit a lawyer to take temporary possession of physical evidence of client crimes for the purpose of conducting a limited examination that will not alter or destroy material characteristics of the evidence," the comment states. "In such a case, applicable law may require the lawyer to turn the evidence over to the police or other prosecuting authority, depending on the circumstances."

A lawyer must come into actual possession of evidence before the obligation to turn it over to the prosecution kicks in, says Lisa G. Lerman, a law professor at the Catholic University of America in Washington, D.C., and co-author of the 2005 textbook Ethical Problems in the Practice of Law. If a client tells the lawyer about the location of evidence and the lawyer merely inspects the evidence without disturbing it, the lawyer's knowledge of the location of the evidence remains privileged.

But once a lawyer takes actual possession of the evidence, he or she may hold it temporarily for testing and examination, but then must turn it over to the prosecution or risk being accused of obstructing a criminal investigation.

But in turning over evidence to the prosecution, a lawyer is not obligated to disclose where the evidence came from, Lerman says.

## Evidence Go-Between

That's where the District of Columbia bar's program comes comes in. Shipp explained how the informal program originated when he spoke on a panel earlier this year at the ABA's National Conference on Professional Responsibility.

Shipp was an assistant bar counsel in 1983 when a lawyer called him with a dilemma. A client had just brought in a gun. The lawyer couldn't turn the gun over to the police without revealing where it came from, but the lawyer couldn't just keep the gun or dispose of it, either. What, the lawyer asked Shipp, should he do?

Shipp called a contact in the U.S. attorney's office, who suggested that Shipp take the gun from the other lawyer and deliver it to the police himself. So Shipp arranged to meet the lawyer, took possession of the gun, brought it back to his office, and called the police and told them to come and get it, which they did.

And that's how they've been doing it in the District of Columbia ever since, Shipp says. He or one of his assistant counsel turn over weapons, drugs, stolen property and other types of incriminating evidence to police after receiving it from lawyers, who usually have obtained the evidence from their clients.

"It not only protects the lawyer from the [ethics] problem," Shipp says, "but it also has a tremendous public policy protection because the last thing you want is for guns, drugs and other contraband goods to go back out on the street."

Shipp says he has had only one problem in the two decades the program has been in effect. About 10 years ago, he says, a lawyer left a stolen car that a client had turned over to him parked in front of the bar counsel's office. As usual, Shipp called the police to pick the car up. The next morning, the car was gone stolen off the street before the police tow truck could pick it up.

Even with the rare glitch, the District of Columbia program makes sense, says Lerman, who helped organize the professional responsibility conference program. She says she did so partly as a way of bringing more attention to how the issue is handled in D.C.

"I think this program provides a reasonable way of encouraging criminal defense lawyers to comply with their duty to turn over evidence that comes into their possession while preserving some degree of confidentiality," she says. At the same time, the evidence still can be useful to police and prosecutors investigating specific crimes.

Although the issue has not been widely addressed, the courts that have ruled appear generally to agree on what a lawyer should do if he or she receives potentially incriminating evidence from a client.

## Paper Chase

But while the rule on when lawyers must turn over objects like weapons and stolen property to prosecutors in conjunction with a criminal case is fairly clear, experts say the law is less clear when it comes to documents used in the perpetration of a crime.

At least one state court has held that documents should be treated no differently than other physical evidence. In 1978, the Alaska Supreme Court ruled that a lawyer had a duty to turn over a client's written kidnap plan to prosecutors even without having been asked for it. Morrell v. State, 575 P.2d 1200.

In 1994, a California court of appeal reached a similar conclusion in People v. Sanchez, 24 Cal. App. 4th 1012. After the defendant in that case was arrested on charges of strangling his girlfriend, his family found incriminating writings in his room, including what appeared to be a murder checklist.

The family gave the papers to the defendant's lawyer, who gave them to the judge, who gave them to the prosecutor.

The court majority held that the defendant's lawyer was fulfilling his legal obligation, while a concurring judge raised the question of whether documents should be treated differently than other types of evidence. Lerman says Morrell doesn't create clear precedent on the question of whether a lawyer must disclose to prosecutors documents providing evidence of a white-collar crime. After all, she notes, the kidnap plan at issue in Morrell was not the kind of document a lawyer might receive from a client engaged in the kind of theft, embezzlement or other activities that constitute white-collar crime.

Lerman notes that the American Law Institute's Restatement of the Law Governing Lawyers makes no distinction between physical and documentary evidence.

Likewise, ABA Model Rule 3.4 states that a lawyer may not "unlawfully alter, destroy or conceal a document or other material having potential evidentiary value."

"I think that a ransom note, a map of where the loot is buried, etc., will be treated like other inculpatory physical evidence," says Bruce A. Green, a law professor at Fordham University in New York City. "Business records, on the other hand, will be treated differently. The lawyer cannot destroy them and may have to produce them pursuant to a subpoena. But ordinarily, no one would regard it as obstruction of justice for the lawyer to take and maintain business records."

When it comes to documents, Lerman says, a distinction should be made between a copy and an original. If a document in the lawyer's possession is just one of many copies, he or she arguably should have no duty to turn it over to police or prosecutors. If, however, the lawyer has the only copy, the document should be treated like any other piece of physical evidence, she says.

To make the point, Lerman refers to a 1967 ruling by the Richmond, Va.-based 4th U.S. Circuit Court of Appeals, one of the first to address these issues. There, the court affirmed an 18-month suspension from federal practice for a lawyer who took a bag of money and a sawed-off shotgun from a client suspected of bank robbery and put them in a safe deposit box. In re Ryder, 381 F.2d 713.

"If the lawyer has the only copy of a document used in the commission of a crime," Lerman says, "it would be just like taking the gun and putting it in the safe deposit box."